IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HARVEY L. SMITH, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | 1:08CV448 |
| ) | |
| CABARRUS COUNTY SCHOOLS, ) | |
| STEVE ALEXANDER, CTO, ) | |
| MICHAEL STOCKS, Technology ) | |
| Manager, and CABARRUS COUNTY ) | |
| BOARD OF EDUCATION, ) | |
| ) | |
| Defendants. ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court for determination of several pending motions filed by the parties. These include (1) Plaintiff's motion to amend his complaint (Docket No. 9); (2) Plaintiff's motion for summary judgment (Docket No. 11); Plaintiff's motion for an extension of time to obtain affidavits (Docket No. 16); Plaintiff's motion to compel discovery (Docket No. 18); and Defendants' motion for summary judgment (Docket No. 26). All motions are fully briefed and ready for a ruling.

Plaintiff Harvey L. Smith proceeds *pro se* in this civil action arising out of his former employment with Defendant Cabarrus County Schools. He alleges, *inter alia*, that he was discriminated against on the basis of race with regard to promotion opportunities and his

termination from employment; he further alleges retaliation by Defendants. Plaintiff Smith has also filed a separate and related case in this court, Civil Action No. 1:08CV651, wherein he alleges that the Cabarrus County Board of Education discriminated against him on the basis of age with regard to his termination.

The parties have filed cross-motions for summary judgment, and these motions are addressed below. The other motions before the Court may be dealt with summarily. Plaintiff's motion to amend his complaint, not opposed by Defendants, is **GRANTED**. The Amended Complaint (Docket No. 10) shall be deemed properly filed. Defendants are deemed to deny the material allegations of the Amended Complaint and need not file a responsive pleading unless they wish to set out defenses not contained in the original Answer (Docket No. 6). Plaintiff's motion for an extension of time to obtain affidavits (Docket No. 16) is **DENIED**. Plaintiff, early in this case, requested that he not be required to disclose the identity of witnesses until he had obtained affidavits from them. This request has no proper foundation under the Federal Rules of Civil Procedure. Plaintiff is required by Fed. R. Civ. P. 26(a)(1) to disclose at the outset of the case the names of persons who are likely to have discoverable information. He may seek to obtain affidavits from those persons at any time if he wishes, but that wish forms no basis for delaying his obligation to disclose witnesses so that discovery may proceed in an orderly fashion. Plaintiff's motion to compel discovery (Docket No. 18) is **DENIED**. That motion is a duplicate of a motion he filed in Civil Action No. 1:08CV651; the motion to compel was denied in that case, and the Court's ruling is

incorporated herein by reference. *See* Docket No. 31 in 1:08CV651. The Court now turns to consider the cross-motions for summary judgment.

### The Complaint and the Amended Complaint

Plaintiff Smith proceeds *pro se*, and his pleadings and arguments are often ambiguous and difficult to decipher. It is clear, however, that he intends to pursue Title VII claims of race discrimination, harassment, and retaliation with regard to promotion opportunities and his termination from employment with the Cabarrus County Schools. In his original complaint, he cites "the common law and public policy of North Carolina" as a basis for jurisdiction. He refers to other statutes in passing (28 U.S.C. §§ 2201, 2202, 1327, and 42 U.S.C. § 1981) as bases for jurisdiction and venue, but he does not specifically develop causes of action related to any of these statutes. His factual allegations in the original complaint focus on (1) harassment by Defendant Steve Alexander by questioning him about applying for a position; (2) discrimination with regard to promotion opportunities; (3) harassment by Defendant Michael Stocks by calling him a "[f]lunkie"; and (4) discrimination and retaliation with regard to his termination in April 2008. He identifies his "First Claim for Relief" as arising under Section 1981 and Title VII, and he again cites the public policy

and laws of the State of North Carolina.[1] The original complaint sets out no other claims for relief. (Docket No. 1, Complaint.)

The Amended Complaint adds the Cabarrus County Board of Education ("the Board") as a Defendant. The Amended Complaint lists alleged "discriminatory practices and policies" of the Board which included the disciplining and termination of Plaintiff, retaliation against Plaintiff, failure to coach and counsel Plaintiff, and failure to follow appeal procedures with regard to Plaintiff's grievance. Title VII is identified as the legal foundation for Plaintiff's claims in the Amended Complaint. (Docket No. 10, Am. Complaint.)

---

[1] Plaintiff Smith never identifies, in any filing with the court, the public policies or common law of North Carolina that he believes to have been violated by Defendants. Defendants have not been fairly apprised of any discrete causes of action under these legal rubrics. Accordingly, Defendants are entitled to judgment on these amorphous claims. The Court, in searching the summary judgment record, has found no competent evidence that could support such claims in any event. Plaintiff also briefly mentions 42 U.S.C. § 1981 as a basis for his complaint, although it is clear that Title VII of the Civil Rights Act of 1964 is the primary legal basis for his claims of discrimination and retaliation. Nonetheless, a § 1981 claim brought against a governmental entity such as the Cabarrus County Board of Education is subject to the requirements of § 1983 which provide liability exists only for an "officially adopted" government policy or custom. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). Only those with final policy-making authority may, by their actions, subject the governmental entity to liability. *See Green v. Fairfax County Sch. Bd.*, 832 F. Supp. 1032, 1042 (E.D. Va. 1993)(Board not liable under § 1983 for alleged discrimination in denial of position by Assistant Principal). In this case, the Board's actions are implicated only with regard to its outsourcing decision, discussed *infra*, and Plaintiff's related claim of discrimination and retaliation in his termination

## The Cross-Motions for Summary Judgment

Plaintiff moved for summary judgment early in this action, before the completion of discovery. (Docket No. 11.) The Court has postponed consideration of the motion until this time. Defendants moved for summary judgment following the completion of all discovery in the action. (Docket No. 26.) Both summary judgment motions are ready for a ruling.[2]

## The Summary Judgment Standard of Review

A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party.

---

[2] Plaintiff has filed a "surreply" with regard to Defendants' summary judgment motion. (Docket No. 35.) On review of the document, and in consideration of Plaintiff's *pro se* status, the Court **GRANTS** leave for the filing of the surreply.

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *cert. denied,* 481 U.S. 1029 (1987). A mere existence of a scintilla of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id*. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

## Discussion

Plaintiff's *pro se* Complaint and Amended Complaint (which supplements rather than replaces the original complaint) raise a number of legal claims. As the Court construes the claims, Plaintiff has made both Title VII and § 1981 claims of racial discrimination, harassment, and retaliation. As Defendants, Plaintiff has named his former employer, the Cabarrus County Board of Education, as well as the "Cabarrus County Schools," and individual Defendants Steve Alexander (Chief Technology Officer) and Michael Stocks (Technology Manager).

It is apparent at the outset that some Defendants are clearly entitled to judgment on some of Plaintiff's claims. The Court first notes that summary judgment on all claims should be granted to Defendant Cabarrus County Schools since that Defendant is not an entity

subject to suit. Under state law, the school system does not have the capacity to sue or be sued. Absent specific statutory authority, only persons in being may be sued. *Davis v. Messer*, 119 N.C. App. 44 (1995). The "Cabarrus County Schools" is merely a component of the Cabarrus County Board of Education, and therefore lacks the capacity to be sued. *See generally Coleman v. Cooper*, 89 N.C. App. 188, 192 (1988)(no liability for a police department). In this action, the Cabarrus County Board of Education, Plaintiff Smith's actual employer and an entity that is properly subject to suit, has been added as a defendant by means of the Amended Complaint. Thus, the dismissal of all claims against the "Cabarrus County Schools" is of limited practical significance.

Second, the Court notes that the individual Defendants cannot have liability under Plaintiff's Title VII claims since they are not "employers" within the meaning of Title VII. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177 (4th Cir. 1988). Accordingly, such claims should be dismissed without further discussion.

Third, under Title VII, Plaintiff may only pursue claims raised, or closely related to those raised, in his EEOC Charges Nos. 430-2008-00518 and 430-2008-02944. Those are the only charges on which Plaintiff has been issued a notice-of-right-to-sue letter by the EEOC Further, since a Title VII plaintiff must file an EEOC charge within 180 days of the occurrence of an alleged unlawful employment practice, employment practices occurring outside the 180-day-period are time-barred and cannot form the basis of a suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Thus, in this case, Plaintiff's Title

-7-

VII claims are limited to occurrences that happened after May 19, 2007, since Plaintiff filed the underlying EEOC charge (No. 430-2008-00518) on November 16, 2007.[3] (*See* Docket No. 27, Defs' Br. in Support of Mot. for Summ. J., Dep. of Harvey L. Smith ("Smith Dep."), Dep. Ex. 22.)

The Court now turns to review the competent evidence proffered by the parties under Rule 56 procedures. The record shows that Plaintiff was employed by the Board on September 8, 2004, as a Technology Technician II in the Information Technology Department. On March 23, 2005, Plaintiff Smith and three other candidates were being interviewed for a Local Area Network ("LAN") Engineer position. (Docket No. 28, Aff. of Steve Alexander ("Alexander Aff.") ¶ 4.) Although an interview time was established for Plaintiff Smith, the interview never occurred. Defendants maintain that Plaintiff missed his original interview time, and told Defendant Alexander that he had not received proper notice and was not ready to interview. (*Id.* ¶ 5.) According to Defendants, the interview was then re-scheduled for the next morning at 7:30 a.m. by mutual agreement, but Plaintiff called Alexander later in the day and stated that he had decided not to interview for the position. The next day, the interview team hired one of the interviewed candidates. Defendants aver that on March 29, Alexander received an email from Plaintiff Smith indicating that he wanted to be interviewed for the LAN Engineer position if possible. Alexander was out of

---

[3] Plaintiff also filed earlier EEOC charges, but he withdrew these and, therefore, no right-to-sue letters were issued. (Smith Dep., Dep. Exs. 10 and 13.)

the office with surgery at the time, but on April 11, he responded to Plaintiff Smith, advising that the position had been filled. Plaintiff Smith never filed an EEOC charge related to the LAN Engineer position.

In response, Plaintiff takes issue with some factual assertions made by Defendants regarding the LAN Engineer position. He first says that only two other candidates were interviewed. (Docket No. 33, Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 3.) In his affidavit (Docket No. 32, Ex. 5, Aff. of Harvey Smith ("Smith Aff."), Plaintiff states that he was:

> [R]eady to be interviewed at 1:00 p.m. [apparently on March 23, 2005] which Steve Alexander made a communication error of the scheduled time for my interview. Mr. Alexander rescheduled my interview for the following Monday around 7:30 a.m. I arrived on time and ready to be interviewed, before I entered the room Steve approached me in the hallway before the interview room and stated there [] no need to be interviewed [] we have already selected another candidate.

(Smith Aff. at 3.)

Defendants' summary judgment showing on this issue includes email communications between Alexander and Smith regarding the interviews in question. On March 24, Alexander emailed Smith, saying "Just to confirm our Nextel conversation on 3/23/2005. You indicated to me that you did not want to interview on 3/24/2005. I respect your decision." (Alexander Aff., Ex. B.) On March 29, Plaintiff Smith responded, "Steve I would like to be interviewed again if it is possible. At the time it was a miss understanding [sic] on the time and day of

-9-

Case 1:08-cv-00448-NCT-PTS   Document 36   Filed 08/11/09   Page 9 of 20

the interview. If ok I would like to be interviewed when you get back feel [sic] better." (*Id.*, Ex. C.) Under date of April 11, Alexander emailed Smith, saying:

> I understand the miss understanding [sic] of the time and day of our original interview. That is why we rescheduled it on 3/24/2005. Since you did not want to interview at that time we have already selected another candidate. I would be glad to consider you in the future for other openings.
>
> Sorry for the delay in responding but the surgery has put me way behind in responding to email.
>
> I appreciate all your hard work and effort here at the Technology Center.

(*Id.*)

Plaintiff Smith has raised other claims concerning other workplace events during his employment.[4] He filed an internal complaint alleging that Brandy Crisco, a co-worker, had placed improper comments about him in a work order and that her husband, Kevin Crisco, another co-worker, had cursed him. Alexander investigated Plaintiff's grievance. He reviewed the work order and interviewed persons identified by Smith as witnesses. He concluded that there was confusion regarding the work order, but no improper comments were made. He also found that no witnesses corroborated Plaintiff's version of the facts regarding the alleged "cursing" incident. Alexander nonetheless met with the technology

---

[4] Plaintiff Smith filed EEOC charges regarding his suspension in May 2007 for his knowledge of, and some alleged participation in, unauthorized video and audio recordings made in the workplace. The Board eventually reinstated Smith with full back pay. Smith withdrew all EEOC charges related to this matter, stating to the EEOC that "[e]verything is satisfactory with my job conditions." (Smith Dep. at 33-35, Dep. Ex. 10.) The EEOC responded by discontinuing its processing of Smith's charges.

-10-

staff and advised that unprofessional comments could result in disciplinary action. Plaintiff filed an EEOC charge regarding the incident, and the EEOC made a "no cause" determination and issued a right-to-sue letter on April 30, 2008.

Plaintiff states in briefing that he applied for another position as Database Administrator in April 2007. (Smith Aff. at 4.) He contacted Alexander regarding when Alexander would start the interview process for the position which had been posted for over six months. Plaintiff received an email response from Alexander indicating that he was going to re-evaluate the position to determine if the position requirements needed to be changed in order to produce a greater number of applicants. Alexander said he would keep Plaintiff's name on file in case the position was posted again. The position was never re-posted.

While Plaintiff has raised claims concerning racial harassment and discrimination in promotion opportunities, it is apparent from his pleadings and briefs that his primary claim is that his termination from employment by the Board in April 2008 was the result of racial discrimination and retaliation. (In a separate action in this Court, Plaintiff alleged that his termination was the result of age discrimination.) His termination in 2008 resulted from the outsourcing of all (or most) Technology Technician II positions as a result of a contract arrangement the Board entered into with Dell Services.

Plaintiff Smith's primary duties as a Technician II were to support and maintain administrative and instructional computers, software, and networks; to provide first response

support through the help desk work order system; to maintain computer systems at the building level; and to install equipment. In the fall of 2007, the technology subcommittee of the Board began to discuss whether outsourcing the help desk and work station support functions would be a cost-effective improvement in the coverage provided for work stations throughout the Cabarrus County Schools. (Docket No. 28, Alexander Aff.; Docket No. 29, Aff. of Dr. Barry Shepherd; Docket No. 30, Aff. of Cindy Fertenbaugh.) Alexander, operating under instructions from the Superintendent, identified Dell as a potential candidate to provide services. He identified a number of efficiencies that could be accomplished by outsourcing. Alexander presented his findings and recommendation in favor of outsourcing to Dr. Harold Winkler, then the Superintendent. Dr. Winkler agreed with the recommendation but, since he was leaving his position, asked Alexander to present his findings to the incoming Superintendent, Dr. Barry Shepherd. Dr. Shepherd was not told of Dr. Winkler's opinion and was not given any information regarding the employees to be affected by outsourcing insofar as their race or prior EEOC activities were concerned. (Alexander Aff. ¶¶ 14-17.) Dr. Shepherd determined that outsourcing was the best business decision and presented the matter to the Board for consideration.

The Board reviewed the matter and voted to award to Dell a contract to provide the services in question. Several technology positions, including that held by Plaintiff Smith, were eliminated as a result of the outsourcing. Plaintiff filed an EEOC charge claiming, as is relevant to this action, that the outsourcing occurred due to his race and in retaliation for

-12-

prior EEOC charges that he filed. With specific reference to race discrimination, Plaintiff Smith alleged in the EEOC charge that there were five technicians in technology department. He stated that, "Out of 5 technician positions in the department, 4 were eliminated and . . . I was the only Black." (Smith's Dep., Dep. Ex. 22.)

Upon these factual showings by the parties, the Court must determine the remaining summary judgment issues.[5] The Court first determines that Plaintiff has raised no triable issue of racial "harassment" or "hostile workplace." To establish a hostile work environment claim against the Board, Plaintiff Smith must show that he was subjected to conduct that was (1) unwelcome, (2) based on race, (3) sufficiently severe and pervasive to alter the conditions of employment and create an abusive work environment, and (4) that there is some basis to impute liability to the employer. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179. 183-84 (4th Cir. 2001). Plaintiff apparently posits his claim on the alleged improper comments placed in a work order, the "cursing" he received on one occasion from Kevin Crisco, and according to the Complaint, his being called a "[f]lunkie" by Defendant Stocks. The Court finds that the proffered evidence falls far short of creating an issue under parts (2) and (3) of the four-part test. Nothing in evidence ties the remarks in question to racial derogation, and nothing suggests a severe and pervasive environment of abuse. The isolated incidents of which

---

[5] The Court has already determined that the "Cabarrus County Schools" is entitled to judgment on all of Plaintiff's claims and that the individual Defendants are entitled to judgment on the Title VII claims of Plaintiff.

Plaintiff complains do not approach the threshold for a colorable claim of harassment or a racially hostile work environment. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 190-91 (4th Cir. 2004)(isolated conduct not sufficiently severe or pervasive).

Plaintiff's claims regarding denial of promotions based upon race also do not survive Defendants' summary judgment motion. Plaintiff never filed any EEOC charge regarding these matters, so he has no Title VII claim. *See* 42 U.S.C. § 2000e-5(e). Insofar as § 1981 is fairly implicated by Plaintiff's ambiguous Complaint and Amended Complaint, the Board can have no liability since Plaintiff challenges no promotion-related action by the Board, and the actions of the individual Defendants cannot constitute officially adopted government policy or custom. *See, e.g., Jett,* 491 U.S. at 701; *Green,* 832 F. Supp. at 1042. His claims against individual Defendants Alexander and Stocks fail on the merits as well. He shows no evidence of relevant action by Michael Stocks, the Technology Manager, with regard to promotion opportunities. As to Defendant Alexander, Plaintiff's factual allegations hinge primarily on his allegations of "misunderstandings" about interview dates and fail to raise an issue of intentional racial discrimination. *See generally Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 240 (4th Cir. 1982). Specifically, Plaintiff has proffered no evidence that reasonably refutes the email record showing that Plaintiff missed his original interview time (as a result of a misunderstanding), but then renewed the request for an interview only *after* another candidate had already been awarded the position of LAN Engineer. Plaintiff's own email response of March 29, 2005, the authenticity of which he has not disputed, proves him

-14-

out of court. There, Plaintiff said that he "would like to be interviewed again if it is possible," that the prior missed interview was a "miss understanding [sic]," and that he'd like to be interviewed when Alexander returned from surgery leave. Plaintiff now attempts to maintain that he was told by Defendant Alexander on the morning of March 24 that the position had already been filled despite Plaintiff's re-scheduled interview for that date, but Plaintiff's email on the 29th is indisputable proof that even as late as March 29, Plaintiff (1) did not know that the position had been awarded to someone else, and (2) did not believe that Defendant Alexander had intentionally deprived him of an interview opportunity. Under this evidentiary record, no reasonable jury could find for Plaintiff on his claim of discrimination regarding denial of promotion to LAN Engineer.

With regard to the position of Data Administrator, which Plaintiff applied for, Plaintiff has no evidence that the position was ever filled by any person, of whatever race. No inference of discrimination arises from the fact that Alexander withdrew the position where, in over six months of posting, the position had not drawn interest from even as many as four candidates. Plaintiff has presented no evidence that Alexander was required by policy to go forward with the job offering or had done so in similar circumstances in the past. Under this record of evidence, Plaintiff's claim of racial discrimination with regard to promotion opportunities fails as a matter of law.

Plaintiff's principal claim in this action appears to be that he was discharged from his employment on the basis of racial discrimination or in retaliation for the EEOC charges he

-15-

had filed. His discrimination claim under Title VII and § 1981 may be analyzed under the *McDonnell Douglas* scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To make out a *prima facie* case of discrimination, Plaintiff must show that (1) he is a member of a protected group, (2) he was qualified for the job and his performance was satisfactory, (3) he was fired, and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *Honor*, 383 F.3d at 188.

On review, the Court finds that it is not clear that Plaintiff can make out a *prima facie* case of discrimination in his termination. Plaintiff's EEOC charge recites that four out of five of the Technician II workers in his department were terminated as a part of the outsourcing to Dell, and he was the only black. By his own statement, Plaintiff acknowledges that three out of four of the terminated employees were white. No strong inference of discrimination arises from this fact. The parties dispute whether the fifth "Technician II" (Kevin Crisco) was in fact a comparable technician or held different responsibilities, but under any version of the facts, three of the four terminated employees were white.

Assuming, however, that Plaintiff can show a *prima facie* case of race discrimination, Defendants have proffered legitimate business reasons for their actions. According to the affidavits of Superintendent Shepherd, Board member Fertenbaugh, and Chief Technology Officer Alexander, a number of important reasons led to the decision to outsource the help desk function. (Docket Nos. 28, 29 and 30.) These included Dell's experience working with

-16-

large school systems, an increased ability to adapt to fluctuation in support needs, Dell's assumption of training responsibility and costs, increased speed in fixing broken hardware, better work order management and planning capabilities, and better support for different types of equipment. Plaintiff has not raised a triable issue that these legitimate reasons to outsource are false and that race discrimination was a reason for the decision. Merely questioning the merits or wisdom of the decision does not show pretext. *See Hawkins v. PepsiCo, Inc.* 203 F.3d 274, 279 (4th Cir. 2000). Plaintiff has produced no evidence, other than his own unlikely conjecture, that the Board went through a month-long investigative process, eliminated the positions of several white employees as well as Plaintiff, and entered into a five-year contract with Dell, all with a motivation to discriminate against Plaintiff on the basis of race. Accordingly, Plaintiff Smith's race discrimination related to Defendants' outsourcing decision does not survive Defendants' motion for summary judgment.

Plaintiff Smith's final claim in this action is that he was terminated by the Board in retaliation for the EEOC charges he filed regarding the terms and conditions of his employment. In order to make out a case of retaliation, Plaintiff must show that (1) he engaged in protected activity, (2) Defendant took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355 (4th Cir. 1989), *overruled on other grounds, Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). As to the element of causal connection, the Fourth Circuit has observed that "if the employer did not know of the protected activity

-17-

a causal connection to the adverse action cannot be established." *Ross*, 759 F.2d at 365 n.9. If Plaintiff can show a *prima facie* case, Defendants may then show legitimate, nondiscriminatory reasons for the adverse action, and Plaintiff may show that the proffered reasons are a mere pretext for retaliation.

Plaintiff Smith contends that he can meet the "causal connection" element of the *prima facie* case because of the closeness in time between his protected activities and the adverse employment action in question – his termination. In briefing, Plaintiff argues that "[m]oreover, 5 short months before being fired, Mr. Smith filed a charge of Discrimination with the EEOC." (Docket No. 35, Pl.'s Resp. Br. in Opp'n to Defs.' Reply Br. at 10.) Plaintiff's reference in this argument is to the EEOC charge he filed on November 16, 2007.

The Court will assume for argument that Plaintiff's proffered evidence is sufficient to raise a *prima facie* case of retaliation with regard to his termination.[6] Nonetheless, the Court concludes, on review of all the competent evidence before it, that Defendants are entitled to summary judgment on Plaintiff's claim of retaliation. Defendants have shown a legitimate, non-retaliatory reason for Plaintiff's termination – the outsourcing of Technician II positions – and Plaintiff has presented no evidence beyond speculation to suggest that this

---

[6] Actually, Plaintiff Smith filed his first EEOC charge in May 2007, and he was not terminated due to outsourcing until April 2008. The passage of nearly a year between his initial protected activity and his termination mitigates against a finding of a causal connection between the two events. Even the five-month period cited by Plaintiff does not show causation. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205 (10th Cir. 1997)(three-month proximity in time insufficient to show a causal connection).

-18-

reason is a mere pretext for retaliation. The Court notes that Superintendent Shepherd, who concluded that outsourcing was the best business decision for the school system and set in motion its consideration by the full Board, had no knowledge concerning the age, race, or any previous EEOC charges that had been filed by the affected employees. *(See* Shepherd Aff. ¶¶ 1-5.) Further, Plaintiff has produced absolutely no evidence that Board members, who voted on the outsourcing plan, had any retaliatory motive or knowledge of prior EEOC activities of the technician employees. Plaintiff has produced no evidence that raises a reasonable inference that the Board went through a half-year process, ultimately eliminating the positions of white employees as well as one black employee (Plaintiff), and entering into a five-year contract with Dell, with a motivation to retaliate against Plaintiff for EEOC charges he had filed. Defendants are entitled to summary judgment on Plaintiff's claim of retaliation.

## Conclusion

For reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (Docket No. 26) be granted in its entirety, that Plaintiff's motion for summary judgment (Docket No. 11) be denied, and that this action be dismissed with prejudice. **IT IS ORDERED** that Plaintiff's motion to amend complaint (Docket No. 9) is **GRANTED** and that Plaintiff's motion for extension (Docket No. 16) and motion to compel discovery (Docket No. 18) are **DENIED**.

This the  11th  day of August, 2009.

                                                                           /s/ P. Trevor Sharp
                                                     United States Magistrate Judge